JUDGE SCHOFIELD

MAG. JUDGE PECK

**13 CV 6399**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
OVATION LIVE, INC., d/b/a OVATION LIVE
ENTERTAINMENT,

          Plaintiff,

vs.

REVEL ENTERTAINMENT GROUP, LLC,

          Defendant.
-------------------------------------------------------------------X

Civil Action No.
ECF Case

**COMPLAINT**

RECEIVED
SEP 1 2013
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff Ovation Live, Inc., d/b/a Ovation Live Entertainment ("Ovation" or "Plaintiff"), by its attorneys, Greenberg Traurig, LLP, as and for its Complaint against Revel Entertainment Group, LLC ("Revel" or "Defendant"), alleges as follows:

### NATURE OF THE CASE

1.     This is a breach of contract case arising from Revel's breach of a five-year agreement (defined below, and attached as Exhibit 1) between the parties under which Ovation is the exclusive "talent buyer" for Revel, which operates an entertainment resort, hotel, casino and spa located in Atlantic City, New Jersey.

### PARTIES

2.     Plaintiff Ovation is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York.

3.     The principals of Ovation are Neil Moffitt ("Moffitt"), a resident of the State of Nevada, and Faisel Durrani ("Durrani"), a resident of the State of New York.

4.     Upon information and belief, Defendant Revel is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of

business in New Jersey. Revel is affiliated with the Revel Casino located in Atlantic City, New Jersey (the "Revel Casino").

## JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. 1332(a)(2), as Plaintiff Ovation and Defendant Revel are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in the United States District Court for the Southern District of New York because a substantial part of the events or omissions giving rise to the claim occurred in New York, NY. Defendant Revel, by and through its principals, (a) conducted meetings and negotiated the terms of the contract at issue with certain principals of Ovation in Manhattan; (b) knowingly and purposefully contracted to do business with a New York corporation; and (c) engaged in numerous meetings in Manhattan concerning the implementation and performance of the contract at issue.

7. This Court has personal jurisdiction over Defendant Revel because, in addition the acts set forth above, Revel has intentionally and purposefully solicited business from the citizens of New York City through its advertising and promotional campaigns directly related to the entertainment acts covered by the contract at issue. Moreover, upon information and belief, Revel maintains an office in New York City and has employees in the State. As such, Revel does business in New York and has purposefully availed itself of the benefits and protections of the laws of New York such that it should reasonably anticipate being haled into court here. As detailed above, Revel also has continuous and systematic contacts with this judicial district.

## GENERAL ALLEGATIONS

8. Revel Casino is an entertainment resort, hotel, casino and spa located in Atlantic City, New Jersey. Revel Casino opened to the public on April 2, 2012, and had its grand opening on May 25, 2012.

9. Revel Casino includes "Ovation Hall," a 5,500 seat arts and entertainment amphitheater, which hosts live music and entertainment acts (hereinafter the "Venue").

10. In order to book entertainment acts for the Venue, Defendant Revel engaged Ovation as its exclusive "talent buyer" under the terms of a Booking Agreement ("Agreement") dated March 1, 2013.

11. The Agreement contained a five-year initial term from January 1, 2013 through December 31, 2017 (the "Initial Term"), and an option by Ovation to extent the Initial Term for an additional three years upon the achievement of gross ticket receipt milestones in connection with Ovation's engagement (the "Option") (together with the Initial Term hereinafter referred to as the "Term").

12. Pursuant to the Agreement, Ovation agreed to search for and present talent booking opportunities to Defendant Revel for its consideration, and to provide marketing, sales and sponsorship services for the Venue relative to all performance acts engaged by Defendant Revel pursuant to the Agreement. Ovation further agreed to negotiate performance budgets and manage costs of the performance acts covered by the Agreement.

13. At all times, Defendant Revel reserved for itself the sole and absolute discretion regarding whether to book any talent options presented by Ovation, and therefore Defendant Revel maintained the sole and exclusive authority to approve and book an artist for a

performance at the Venue. All artist agreements and "riders" presented by Ovation remained subject to Defendant Revel's prior consent and approval.

14. In exchange for the services provided under the Agreement, Defendant Revel agreed to pay Ovation (a) an annual retainer on One Million Five Hundred Thousand Dollars ($1,500,000) paid in arrears in equal monthly installments, and (b) commissions in the amount of thirty percent (30%) of net revenues, net food and beverage commission sales within the Venue and any net sponsorship income secured by Ovation for any performances at the Venue by approved artists.

15. Defendant Revel did not have the right to terminate the exclusive Agreement unless Ovation (a) materially breached the Agreement or (b) failed to present a minimum of thirty-five (35) acts that were consistent with Revel's booking standards during each year of the Term.

16. From the commencement of the Initial Term, and at all relevant times to this dispute, Ovation has consistently presented Defendant Revel with first-class entertainment booking opportunities for the Venue.

17. As of September 1, 2013, Ovation has provided Defendant Revel with approximately eighty (80) live entertainment opportunities for the year 2013, far exceeding its requirement to present a minimum of thirty-five (35) opportunities in each year of the Term.

18. Defendant Revel has booked twenty-eight (28) of the live performance opportunities presented by Ovation, including headline acts such as Rihanna, Alicia Keys and Bill Maher. Numerous of the entertainment acts presented to Defendant Revel by Ovation have already performed at the Venue, and numerous, additional acts presented to Defendant Revel by Ovation will perform at the Venue before the end of 2013.

19. Despite accepting Ovation's valuable services, Defendant Revel has not paid Ovation its compensation due and owing under the terms of the Agreement, including but not limited to (a) its failure to pay July and August, 2013 Retainer installments, and (b) its failure to account for, or pay required commissions on performances at the Venue in the first two quarters of 2013.

20. Instead, Defendant Revel sent correspondence to Ovation dated August 28, 2013, purporting to terminate the Agreement effective September 10, 2013.

21. Defendant Revel included numerous false reasons for its decision to terminate the Agreement, including that "Ovation has failed to present entertainment on a consistent basis throughout the year 2013, and during many periods, including peak periods, the Venue has been dark." Defendant Revel also claimed that "based upon present bookings through the end of 2013, Ovation cannot present the minimum of thirty five (35) required acts for the year 2013," even though Ovation had already greatly exceeded its obligation to present thirty-five (35) opportunities to Revel.

22. Defendant Revel's decision to terminate the Agreement is unrelated to any purported breach by Ovation, and was made in bad faith and in conscious disregard for Ovation's exclusive rights under the Agreement.

23. On September 3, 2013, Ovation sent correspondence to Defendant Revel demanding that Revel withdraw its improper notice of termination. Ovation further demanded adequate assurances from Defendant Revel concerning Ovation's ongoing performance under the Agreement.

24. On September 5, 2013, general counsel for Defendant Revel sent communication to Ovation refusing to withdraw Revel's notice of termination, and ignoring Ovation's demand

for adequate assurances. Defendant Revel confirmed its plan to improperly terminate the Agreement effective September 10, 2013.

25. On September 10, 2013, the CEO for Revel Jeff Hartmann sent correspondence stating that "Bernie Dillon of Dillon Productions is authorized to solicit offers for, and negotiate and enter into agreements for services of performing artists on behalf of Revel Casino Hotel. No other parties have such authorization as of this date."

## FIRST CLAIM FOR RELIEF
(BREACH OF CONTRACT)

26. Plaintiff Ovation repeats and realleges each and every allegation contained in Paragraphs 1 through 25 as though fully set forth herein.

27. Ovation entered into a valid and enforceable Agreement with Defendant Revel on March 1, 2013.

28. Pursuant to the terms of the Agreement, Ovation agreed to present entertainment opportunities to Defendant Revel in exchange for payment of an annual retainer, and commissions in the amount of thirty-percent of net revenues, net food and beverage concession sales and net sponsorship income for performances booked by Defendant Revel for the Venue.

29. At all relevant times, Ovation complied in all material respects with its obligations under the Agreement.

30. Ovation presented Defendant Revel with approximately eighty (80) first-class entertainment opportunities prior to September 1, 2013, of which Revel has engaged twenty-eight (28) acts to perform at the Venue in 2013.

31. Ovation has greatly exceeded its contractual obligation to present a minimum of thirty-five (35) entertainment acts within each year of the Term.

32. Defendant Revel has failed to comply with the terms of the Agreement, and has materially breached the Agreement.

33. Defendant Revel has not paid Ovation all compensation due and owing under the Agreement, including but not limited to (a) its failure to pay July and August, 2013 Retainer installments, and (b) its failure to account for, or pay required commissions on performances at the Venue in the first two quarters of 2013.

34. In addition to the foregoing breach, Defendant Revel unilaterally and without legal justification purported to terminate the Agreement effective September 10, 2013.

35. As a result of Defendant Revel's material breach, Ovation has suffered damages and will continue to suffer damages in an amount not less than Twenty Million Dollars ($20,000,000).

36. Ovation is entitled to recover its incidental and consequential damages resulting from Defendant Revel's breach, including but not limited the recovery of costs, lost profits and damages suffered to Ovation's business reputation.

37. As a further result of Defendant Revel's material and malicious breach, Ovation has been forced to engage legal counsel to prosecute its rights, and therefore is entitled to recover attorney's fees and costs of suit.

## SECOND CLAIM FOR RELIEF
(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

38. Plaintiff Ovation repeats and realleges each and every allegation contained in Paragraphs 1 through 37 as though fully set forth herein.

39. Ovation and Defendant Revel selected the laws of the State of New Jersey as the governing law of their Agreement.

40. New Jersey law imposes an implied covenant of good faith and fair dealing under all contracts.

41. Defendant Revel owed a duty of good faith and fair dealing to Ovation in the performance of the Agreement.

42. Defendant Revel performed in a manner that was unfaithful to the purpose of the contract when it terminated the Agreement without legal justification or excuse.

43. Defendant Revel's decision to terminate the Agreement is unrelated to any purported breach by Ovation, and was made by Revel in bad faith and in conscious disregard for Ovation's exclusive rights under the Agreement.

44. Defendant Revel terminated Agreement arbitrarily, unreasonably and capriciously, with the objective of preventing Ovation from receiving its reasonably expected benefits of the contract.

45. As a result of the foregoing, Revel breached its duty of good faith and fair dealing to Ovation, and Ovation's justified expectations under the Agreement were denied.

46. Based upon Revel's breach of the implied covenant of good faith and fair dealing, Ovation has suffered damages and will continue to suffer damages in an amount not less than Twenty Million Dollars ($20,000,000).

47. Ovation is entitled to recover its incidental and consequential damages resulting from Defendant Revel's breach of the implied covenant of good faith and fair dealing, including but not limited the recovery of costs, lost profits and damages suffered to Ovation's business reputation.

48. As a further result of Defendant Revel's material breach, Ovation has been forced to engage legal counsel to prosecute its rights, and therefore is entitled to recover attorney's fees and costs of suit.

### THIRD CLAIM FOR RELIEF
(UNJUST ENRICHMENT)

49. Plaintiff Ovation repeats and realleges each and every allegation contained in Paragraphs 1 through 48 as though fully set forth herein.

50. Defendant Revel has retained all the benefits of Plaintiff Ovation's services, including having been presented with approximately eighty (80) first-class entertainment opportunities prior to September 1, 2013, of which Revel has engaged twenty-eight (28) acts to perform at the Venue in 2013.

51. Defendant Revel has failed to adequately pay for such services, including without limitation its failure to account for, or pay required commissions on performances at the Venue in the first two quarters of 2013.

52. As a consequence of the foregoing, Defendant Revel has been unjustly enriched at the expense of Plaintiff Ovation in an amount to be proved at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ovation demands that judgment be entered against Defendant Revel as follows:

1. awarding Plaintiff Ovation compensatory money damages in an amount to be determined at trial, but not less than $20 million USD plus all applicable interest;

2. awarding Plaintiff Ovation incidental and consequential money damages in an amount to be determined at trial plus all applicable interest;

9

3. awarding Plaintiff Ovation the costs and disbursements of this proceeding, including reasonable attorney's fees; and

4. for such other relief as the Court deems just and proper.

Dated: New York, New York
September 11, 2013

GREENBERG TRAURIG, LLP

By: /s/ William C. Silverman
William C. Silverman
John J. Elliott
The MetLife Building
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
silvermanw@gtlaw.com
elliottj@gtlaw.com

*Counsel for Plaintiff Ovation Live, Inc., d/b/a Ovation Live Entertainment*